UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS ETHERTON and
CHAD FULLER,

                          Case No. 17-cv-10341

               Plaintiffs,

                          Paul D. Borman
v.                          United States District Judge

SERVICE FIRST LOGISTICS, INC.,
ROYCE NEUBAUER, and
JULIE JONES

               Defendants.
_____/

**OPINION AND ORDER (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.      INTRODUCTION

Plaintiffs Curtis Etherton and Chad Fuller seek to recover unpaid overtime wages from their former employer, Defendant Service First Logistics, Inc. ("SFL"), pursuant to the Fair Labor Standards Act, 29 U.S.C §§ 207(a) and 216(b) ("FLSA"), and the Michigan Workforce Opportunity Wage Act, MCL § 408.414a ("Wage Act"). Defendant Royce Neubaurer is the President and Chief Executive Officer of

1

SFL.[1] Etherton and Fuller were employed by SFL as freight brokers, first as Assistant Brokers (also known as "Senior Brokers in Training") and then as Senior Brokers. Fuller worked for SFL from March 2015 through October 2016, and Etherton was with SFL from April 2014 through October 2016.

The Parties differ as to what Fuller and Etherton's duties were, what those duties involved, and how much of their time was devoted to various functions as freight brokers. It is undisputed that both Fuller and Etherton focused on building a book of business, retaining current clients, and managing various aspects of clients' en route shipping orders.

Fuller and Etherton now allege that they are entitled to overtime wages under the FLSA and the Wage Act as non-exempt hourly workers. SFL and Neubauer in turn argue that Plaintiffs' claims are barred by *res judicata* because of their previous lawsuit against SFL in the Oakland County Circuit Court.

Defendants also contend that Plaintiffs did not in fact work in excess of 40 hours per week so as to qualify for overtime pay, and regardless, were exempt administrative employees. SFL also contends that at least a portion of Etherton's claims are time-barred, and any of Plaintiffs' claims under the Wage Act are barred because SFL is exempt from the Wage Act, as it is subject to the FLSA.

---

[1] Plaintiffs have filed claims against Neubaurer individually (Count II for various violations of the FLSA). (Compl. ECF #1.)  Neubaurer and SFL jointly filed the Motion for Summary Judgment to dismiss the Complaint in its entirety.

## II.    PROCEDURAL HISTORY

On February 2, 2017, Etherton and Fuller filed their three-count federal

Complaint, alleging as follows:

> Count I – Violation of the FLSA, 29 U.S.C §§ 207(a) and 216(b) (SFL)
>
> Count II – Violation of the FLSA, 29 U.S.C §§ 207(a) and 216(b) (Neubaurer and Jones)
>
> Count III – Violation of the Wage Act, MCL § 408.414a (SFL and Neubaurer)

(ECF #1.)

On February 9, 2017, Defendants SFL, Neubaurer, and SFL Human

Resources Director Julie Jones filed their joint Motion for Summary Judgment (ECF

#6) and a Motion for Permission to File Motion for Summary Judgment (ECF #9).

On February 21, 2017, the Court denied the February 9, 2017, Motion for Summary

Judgment as premature. (ECF #8.) Defendant Julie Jones was voluntarily dismissed

by Stipulated Order on August 7, 2018. (ECF #64.)

On August 6, 2018, Plaintiffs filed their Motion for Partial Summary

Judgment (ECF #62). The remaining Defendants (SFL and Neubaurer) filed a

Motion for Summary Judgment (ECF #63).  Having been granted an extension of

time to respond, Defendants and Plaintiffs filed their respective Responses on

September 7, 2018. (ECF #68, 69.) Plaintiffs filed their Reply on September 14,

2018. (ECF #71.) On September 21, 2018, Defendants filed their Reply. (ECF #72.)

The Court held a hearing on the instant Motion on November 20, 2018.

## III.   BACKGROUND

### A. Plaintiffs

Etherton began working for SFL on April 17, 2014 as an Assistant Broker.[2] (Dep. of Curtis Etherton, Mar. 21, 2018, ECF #62-2, PgID 968, 25:2, 18-21.) He became a Senior Broker in November 2014. (Compl. Feb. 2, 2017, ECF #1, PgID 4, ¶27.)  Fuller started as an Assistant Broker on March 9, 2015. (Dep. of Chad Fuller, Mar. 20, 2018, ECF #62-4, PgID 1058, 16:7.) Fuller became a Senior Broker in November 2015. (*Id.*, ECF #62-2, PgID 1059, 21:3-4.) Plaintiffs both departed SFL in October 2016. (Etherton Dep. ECF #62-3, PgID 1004, 162:11-15; Fuller Dep. ECF #62-4, PgID 1117, 253:1-2.)

### B. Defendants

SFL is a logistics company that coordinates and manages freight shipping for its customers. (Dep. of Royce Neubaurer, Jun. 21, 2017, ECF #62-5, PgID 1158, 14:24-15:2.) Royce "Roy" Neubaurer is the President and CEO of SFL. (Compl. ECF #1, PgID 3, ¶10.) Plaintiffs have also filed suit against Neubaurer in his individual capacity. (Compl. ECF #1.)

---

[2] For consistency's sake, all deposition cites are to those attached as exhibits to Plaintiffs' Motion for Partial Summary Judgment. (ECF #62.)

**C. Plaintiffs' Employment at SFL**

Plaintiffs both began at SFL at Assistant Brokers. (Etherton Dep. ECF #62-2, PgID 968, 25:2, 18-21; Fuller Dep. ECF #62-4, PgID 1058, 16:7.)  Assistant Brokers trained with a Senior Broker until they were deemed prepared to begin building their own book of business. (Neubaurer Dep. ECF #62-5, PgID 1165, 43:18-44:6.) Etherton was transitioned to the position of Senior Broker after approximately seven months of training, and Fuller became a Senior Broker after approximately nine months of training. The Assistant Broker and Senior Broker salaries were the same - $35,000. (Etherton Dep. ECF #62-2, PgID 971, 36:7-12.) The Parties differ over the duties over the roles of the Assistant and Senior Brokers.

Defendant Neubaurer testified at his deposition that Assistant Brokers and Senior Brokers "are basically doing the exact same thing" and, after some time on the job, there is no "difference in [the] independent judgment between" the two positions. (Neubaurer Dep. ECF #62-5, PgID 1165, 44:9-18.)

Plaintiff Fuller testified that the Assistant Broker position was more limited: Assistants did not solicit sales. (Fuller Dep. ECF #62-4, PgID 1136, 326:12-14.) Fuller testified that he never contacted customers unless the Senior Broker directed him to do so, and he never negotiated rates or "any kind of loads." (*Id.* at PgID 1140, 342:20-24.) Defendant Neubaurer, on the other hand, testified that an Assistant Broker has the same level of authority and responsibility as a Senior Broker:

> They are affecting that senior broker's book of business by their decisions so they are deciding which trucks are on the shipments, what rate the carrier is being paid, you know, they are negotiating for the broker. They are doing research to help build, you know, [Requests for Proposals] and help build rate sheets so that responsibility is huge. They are deciding how much money or revenue is brought in and/or lost.

(Neubaurer Dep. PgID 1165, 41:20-42:4.) (Errors in original.)

Both Plaintiffs testified that they worked through lunch and beyond regular business hours when they were Assistant Brokers. (Etherton Dep. ECF #62-2, PgID 969, 28:18-29:9; Fuller Dep. ECF #62-4, PgID1137, 332:3-333:16.)

Etherton was an Assistant Broker for approximately eight months (April 2014 to November 2014), and Fuller was in that role for approximately nine months (March 2015 to November 2015). (Etherton Dep. ECF #62-2, PgID 968, 25:2, 18-21; Compl. ECF #1, PgID 4, ¶27; Fuller Dep. ECF #62-2, PgID 1058-59, 16:7-21:3-4).

Both Etherton and Fuller retained their $35,000 per year salary when they became Senior Brokers. Neither ever generated sufficient revenue to become commission-based brokers throughout their employment with SFL. (Fuller Dep. ECF #62-4, PgID 1058, 17:18-21; Etherton Dep. ECF #62-2, PgID 970, 31:1.)

As Senior Brokers, Plaintiffs' duties included cold calling potential new customers from an SFL database, researching outside sources to find additional potential customers to contact, preparation and planning outside of office hours for

cold calls, responding to customer requests for a shipments, negotiating and contracting for shipment rates, and management of en route deliveries (or "loads"), which may have included truck dispatch, addressing damage claims and insurance verification. (Etherton Dep. ECF #62-2, 44:17-25; 58:7-61:2; 261:2-262:23; Fuller Dep. ECF #62-4, 57:7-58:9.)  Senior Brokers could also procure new carriers and were expected to build ongoing relationships with both customers and carriers.

The Parties do not disagree as to whether Plaintiffs were tasked with the general duties delineated above, but they disagree as to the nature, scope, and amount of time dedicated to these tasks.

On September 29, 2016, SFL announced that various Senior Brokers would be moved to the newly-created non-exempt position of "Junior Broker." (Etherton Dep. ECF #62-3, PgID 992, 114:4-115:10.) Compensation for Junior Brokers was $10 per hour for 40 hours with pre-approved overtime of 20 hours per week. (*Id.*) Both Fuller and Etherton were selected to be Junior Brokers.  (Neubaurer Dep. ECF #62-5, PgID 1163, 36:2-3.) Neither Fuller nor Etherton accepted the offer to become Junior Brokers, and Plaintiffs both left SFL in October 2016. (Etherton Dep. ECF #62-3, PgID 1004, 162:11-15; Fuller Dep. ECF #62-4, PgID 1117, 253:1-2.)

One month later, in November 2016, Fuller and Etherton, who had signed non-compete agreements with SFL when they commenced their employment, became employed at SFL's competitor Brighter Logistics ("Brighter") until both

Plaintiffs and Brighter received a cease and desist letter from SFL alleging that Plaintiffs were violating their non-compete agreements. (Etherton Dep. ECF #62-3, PgID 1935, 13:1-22.)

On November 17, 2016, SFL filed suit against both Plaintiffs in Oakland County Circuit Court for breach of their respective non-compete agreements with SFL. (Defs.' Mot., Aug. 6, 2018, ECF #63-7, Ex. E, PgID 2268.) The parties stipulated to a dismissal order in the Oakland County action on December 22, 2016, which required each Plaintiff to pay Defendant SFL $2000 and to dismiss with prejudice "all claims and counterclaims raised or which could have been raised by all parties in this case…." (Defs.' Mot., Aug. 6, 2018, ECF #63-9, Ex. G, PgID 2335.)

## IV.    STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). A fact is "material" for purposes of a summary judgment motion where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute over a material fact is genuine "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 247 (6th Cir. 1991) (internal quotation marks omitted) (quoting *Celotex*, 477 U.S. at 323). If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

"The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present

evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal citations and quotation marks omitted). The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (footnote and internal quotations omitted).

In making the determination on summary judgment whether there are genuine issues of material fact for trial, the court must draw all reasonable inferences in favor of the non-moving party. *See Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). At the same time, plaintiff must produce enough evidence to allow a reasonable jury to find in his favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he

'mere possibility' of a factual dispute is not enough." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

Ultimately, the party who bears the burden of proof must present a jury question as to each element of the claim. *See Davis*, 226 F.3d at 511. Plaintiff cannot meet that burden by relying solely on "[c]onclusory assertions, supported only by [his or her] own opinions." *Arendale v. City of Memphis*, 519 F.3d 587, 560 (6th Cir. 2008). Plaintiff must show probative evidence, based "on more than mere speculation, conjecture, or fantasy," to prevail. *Id.* at 601 (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir.2004)).

All evidence submitted in opposition to a motion for summary judgment must ultimately be capable of being presented in a form that would be admissible at trial:

> The submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial. Otherwise, affidavits themselves, albeit made on personal knowledge of the affiant, may not suffice, since they are out-of-court statements and might not be admissible at trial. *See* Fed. R. Evid. 801(c), 802. However, the party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary. Such "'evidence submitted in opposition to a motion for summary judgment must be admissible.'" *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting *United States Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185,

1189 (6th Cir.1997)). That is why "'[h]earsay evidence . . . must be disregarded.'" *Ibid*. It is also the basis of this court's repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e).

*CareSource*, 576 F.3d at 558-59 (internal citations omitted).

A court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

## V.    ANALYSIS

This opinion will discuss only the issue of *res judicata* because the Court finds it controlling and therefore need not discuss the other issues raised by Plaintiffs. Defendants contend that Plaintiffs' claims are barred by the principle of *res judicata* because of the settlement agreement in the Oakland County case brought against Plaintiffs for breaching their non-compete contracts with SFL. SFL also stated that any claims relating to their employment at SFL should have been raised as compulsory counterclaims in the Oakland County state court action.

The two Plaintiffs signed non-compete employment contracts while employed by SFL. The following language from the SFL Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement establishes that Plaintiffs agreed to continue to be under the agreement/contract for two years after they terminated their employment at SFL:

Whereas, an employee who leaves SFL and competes with SFL's business will cause irreparable injury to SFL's business and SFL has a desire to protect its business; and

Whereas, SFL will not agree to employ or continue to employ Employee, unless Employee signs this Agreement and is bound by it.

\*\*\*

(D)...c. COVENANT NOT TO COMPETE: Employee agrees that, during the course of his or her employment and for a period of TWO (2) years after termination or cessation of Employee's employment for any reason, Employee will not, directly or indirectly...be employed by...any Competing Business....

\*\*\*

e. COVENANT NOT TO SOLICIT CUSTOMERS: ...for a period of TWO (2) years after...cessation of Employee's employment for any reason....

(Defs.' Mot. for Summ. J. Aug. 6, 2018, ECF #63-7, Ex. E, PgID 2282-83.)

After voluntarily terminating their employment at Defendant SFL, both Plaintiffs violated the SFL non-compete provision that was part of their employment contract by becoming employed at Brighter Logistics. Plaintiffs Etherton and Fuller were defendants in the Oakland County action filed against them by Defendant SFL, for violating their signed non-compete contract with SFL. Etherton and Fuller settled the Oakland County action: each of them paid SFL $2000. The Oakland County Circuit Court December 22, 2016 "Stipulated Order of Dismissal with Possible Subject to Reinstatement" stated that "all claims or counterclaims raised or which could have been raised by all parties in this case are dismissed with prejudice and

without costs to any party subject to reinstatement." (Defs.' Mot. for Summ. J. Aug.

6, 2018, ECF #63-9, Ex. G, PgID 2335.) The very next day, Plaintiffs' lawyer in the

instant case, who also represented them in the Oakland County action, subpoenaed

SFL for Etherton and Fuller's employment records, and then proceeded to file this

FLSA case in federal court on February 2, 2017.

As if to confirm that this federal case should have been part of the state court

case, the instant Complaint filed by Plaintiffs in this Court was captioned:

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

(Compl. Feb. 2, 2017, ECF #1, PgID 1.) (Attachment 1.)

The Oakland County action by Defendant SFL against Plaintiffs was clearly

based on their employment at SFL – as is the instant case, a monetary counterclaim

against their former employer that should have been filed in the Oakland County

action. That settlement applied to "all claims." (Defs.' Mot. Aug. 6, 2018, ECF #63-

9, Ex. G, PgID 2335.)

## 1. Application of Federal and Michigan Court Precedent to Plaintiffs' FLSA Claims and State Wage Act Claims

Federal courts "must give the same preclusive effect, under the doctrine of *res*

*judicata* and collateral estoppel, to state court judgments that those judgments would

receive in courts of the rendering state." *Ingram v. City of Columbus,* 185 F.3d 579,

593 (6th Cir. 1999).   In Michigan, "[t]he doctrine bars a second, subsequent action

14

when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 470 Mich. 105, 121 (2004).

This Court finds relevant the federal court decisions in *McConnell v. Applied Performance Technologies* ("APT"). The United States Court of Appeals for the Sixth Circuit, 98 F. App'x 397 (6th Cir. 2004), affirmed U.S. District Judge John Holschuh's two decisions dismissing Plaintiff McConnell's FLSA case. No. C2–01–1273, 2002 WL 32882707 (S.D. Ohio Dec. 11, 2002); No. C2–01–1273, 2002 WL 483540 (S.D. Ohio Mar. 18, 2002). Plaintiff McConnell had settled a prior Ohio state court case brought against him by his former employer APT seeking repayment of its personal loans and cash advances to him.  In his settlement, McConnell agreed to repay the outstanding loans from his employer and to dismiss all claims against his former employer including any FLSA claims.

Seven months later, McConnell filed a Federal Court FLSA claim against his employer APT and its CEO seeking overtime compensation.  In response, APT counterclaimed, alleging a violation of the state court settlement agreement. The district court concluded that by law, McConnell could not waive his FLSA claims, but nevertheless granted Defendant APT's motion for summary judgment, concluding that McConnell's FLSA claim should have been raised as a compulsory

counterclaim in the state court action, and thus his FLSA claims were barred by *res judicata*.

The Sixth Circuit affirmed, concluding that although McConnell could not by law waive his FLSA claims, the district court was correct in concluding "that McConnell's FLSA claims should have been raised as compulsory counterclaims in the state court action and thus his claims were barred by the doctrine of *res judicata*." 98 F. App'x at *1. In affirming Judge Holschuh's rulings in a brief opinion, the Court of Appeals stated that "the reasoning which supports these determinations by the district court has been adequately articulated in that court's opinions." *Id.* at *2.

Judge Holschuh had held, in his final order, on December 11, 2002, that although McConnell was not barred from bringing an FLSA claim against APT by the settlement agreement, summary judgment to APT was required on Plaintiff's FLSA claim: Plaintiff was required to raise that claim as a compulsory counterclaim in that state court action, and thus his FLSA claim was barred by the doctrine of *res judicata*. *McConnell*, 2002 WL 32882707, at *3. Judge Holschuh concluded that the overtime claims existed at the time of the state court litigation, and that they arose out of the same transaction or occurrence that was the subject matter of APT's claims against him, noting Federal Rule of Civil Procedure 13(a), which states in pertinent part:

Rule 13(a) Compulsory Counterclaim:

16

> (1) In General. A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim:
>
> > (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. . . .

Judge Holschuh held that McConnell has failed to show that this defense has no possible relation to the controversy. *McConnell*, 2002 WL 32882707, at *3.

Judge Holschuh also noted that although APT's Chief Executive Officer "was not a party to the state court action[,] . . . even assuming his presence was necessary to adjudicate" the plaintiff's overtime claims, there is no reason to assume that the state court couldn't acquire jurisdiction over him. *Id.* at *5. So too, in the instant case with regard to SFL CEO Royce Neubaurer.

In the instant case as in *McConnell*, it is undisputed that Plaintiffs' overtime claims existed at the time of the state court action and arose during the time of their SFL employment, and Plaintiffs' work for SFL had concluded before their employer filed suit against them in state court. But their employment contract with SFL, with the two year non-compete, had not terminated.

As to whether the overtime claims arose out of the same transaction or occurrence that was the subject matter of APT's claims in state court, Judge Holschuh, following Ohio law, held that counterclaims are compulsory if they are "logically related" to the opposing party's claim such that separate trials would involve a substantiated duplication of effort and time:

17

> As the Sixth Circuit has noted, the effect of the compulsory
> counterclaim is sometimes described in terms of *res judicata*
> and other times in terms of waiver or estoppel.

*Id.* at *7. Judge Holschuh also pointed out that the compulsory counterclaim rule

applies even in cases that are settled rather than pursued to trial.  Significantly, in a

footnote, the district court pointed out:

> Plaintiff has offered no authority to support his contention that
> FLSA claims are not subject to dismissal on the grounds of *res
> judicata*. Courts that have addressed this issue, have held
> otherwise.

*Id.* at *9 n. 5.

In the instant case, Michigan precedent supports similar reasoning. In *Adair*

*v. State of Michigan*, 470 Mich. 105, 121 (2004), the Michigan Supreme Court held:

> This Court has taken a broad approach to the doctrine of *res
> judicata*, holding that it bars not only claims already litigated,
> but also every claim arising from the same transaction that the
> parties, exercising reasonable diligence could have raised, but
> did not.

In the instant case, Plaintiffs' counsel conceded on the record that their FLSA

claims could have been brought in the prior state court case:

> Plaintiffs' Counsel:   Could it have been brought?  Yes.
>
> The Court:               Should it have been brought?
>
> Plaintiffs' Counsel:   I don't think it should have been brought, your
>                                Honor. I don't think it had to be brought.

(Nov. 20, 2018 Hr'g Tr., p. 27.)

18

This Court concludes that Plaintiffs' FLSA claims were required to have been brought. The FLSA overtime compensation claims logically related to the Oakland County employment-related monetary dispute between SFL and Plaintiffs, who were employed pursuant to a contract of employment with their employer SFL, that contained the non-compete clause. That continuing two-year non-compete clause settlement in Oakland County Circuit Court was based upon that very same contract of employment that gave rise to their FLSA claims.[3]

---

[3] The Court notes the recent Supreme Court Opinion in *Encino Motorcars v. Navarro*, 138 S. Ct. 1134, 1142 (2018), which overruled a Ninth Circuit opinion that had invoked "the principle that exemptions to the FLSA should be construed narrowly." The Supreme Court stated:

> We reject this principle as a useful guidepost for interpreting the FLSA. Because the FLSA gives no textual indication that its exemptions should be construed narrowly, there is no reason to give them anything other than a fair (rather than a narrow) interpretation. The narrow-construction principle relies on the flawed premise that the FLSA "pursues" its remedial purpose at all costs.

*Id.* at 1142 (internal citations and quotations partially omitted).

## VI.  CONCLUSION

This Court concludes that Plaintiffs' FLSA claims and Michigan Wage Act

claims were logically related necessary counterclaims that were required to be raised

in the Oakland County case and thus barred under *res judicata*. Accordingly, the

Court GRANTS Defendants' Motion for Summary Judgment, and DENIES

Plaintiffs' Motion for Partial Summary Judgment.


IT IS SO ORDERED.



Dated:  March 7, 2019                         s/Paul D. Borman
                                              Paul D. Borman
                                              United States District Judge